UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                 )
NANCY DALEY,                     )
                                 )
        Plaintiff,               )
                                 )
v.                               )        Civil No. 18-10353-LTS
                                 )
MIRA, INC., & THE SCHEPENS EYE   )
RESEARCH INSTITUTE, INC., f/k/a EYE )
RESEARCH INSTITUTE OF RETINA     )
FOUNDATION,                      )
                                 )
        Defendants.              )
_____)
```

ORDER ON DEFENDANT SCHEPENS EYE RESEARCH INSTITUTE'S
MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 152) AND
PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 156)

May 23, 2023

SOROKIN, J.

Nancy Daley advances claims against the defendants arising from an eye surgery she

underwent in 1986. Schepens Eye Research Institute, Inc. ("SERI"), seeks partial summary

judgment, urging the application of a cap on damages available under Massachusetts law. Daley

opposes and cross-moves for partial summary judgment, arguing New York law applies and does

not include such a cap. As explained herein, SERI's Motion for Partial Summary Judgment

(Doc. No. 152) is DENIED, and Daley's Cross-Motion for Partial Summary Judgment (Doc. No.

156) is ALLOWED.

I.  **BACKGROUND**[1]

Daley, a lifetime resident of New York, underwent surgery in her home state on October 22, 1986, during which her doctor used a MIRAgel implant to repair a retinal detachment in Daley's left eye. Doc. No. 161-1 at 14.[2] Despite the initial success of the repair, over time the MIRAgel implant began to swell and decay the longer it remained in Daley's eye. Id. Consequently, Daley endured multiple surgeries, all in New York, to remove the defective implant, and, on February 24, 2017, she was declared legally blind in her left eye. Id. at 14-15. She claims her injuries were caused by the inadequate testing of the MIRAgel implant's long-term stability. Doc. No. 8 at 11-25.

Daley sued SERI and its affiliate, Mira Inc., in February 2018.[3] Doc. No. 1. In her Amended Complaint filed May 7, 2018, Daley asserted various claims against both defendants, three of which remain against SERI: negligent pre-market testing, strict products liability, and post-sale failure to warn.[4] Doc. No. 8 at 31-42.

SERI is a research institute dedicated to "the prevention and curing of blinding eye disease." Doc. No. 20-1 at 5-7. The company is incorporated in Massachusetts and designated a charitable organization pursuant to Chapter 180 of the Massachusetts General Laws. Id. SERI served as a non-profit research and development partner for Mira, which manufactured and sold

---

[1] The Court recounts here only those facts necessary to resolve the narrow issue presented at this time, and it relies on the parties' papers including the Statements of Material Undisputed Facts appended to SERI's reply brief. Doc. No. 161-1.

[2] Citations to items appearing in the Court's electronic docket ("Doc. No. ___ at ___") reference the document and page numbers assigned by ECF.

[3] Mira is incorporated, and has its principal place of business, in Massachusetts. Doc. No. 8 at 1. Mira has not engaged in motion practice, and Daley's claims against Mira are not presently at issue.

[4] In an Order issued February 8, 2019, the Court dismissed some of Daley's original claims against SERI. Doc. No. 62. The three that survive the are the only claims discussed in this Order.

ophthalmological devices commercially. Doc. No. 91 at 1. It is uncontested that SERI designed,

tested, and completed all scientific research required for MIRAgel's FDA approval, that "all

activities by SERI that are relevant" to the pending motions "were carried on to accomplish

directly the charitable purposes of SERI," and that MIRAgel was the implant placed in Daley's

left eye. Doc. No. 161-1 at 2-5, 13-14.  In the course of the foregoing, SERI obtained a patent on

MIRAgel and thereafter entered into a worldwide licensing agreement with Mira. Id. at 6-7.

The pending cross-motions ask the Court to answer one narrow question:  does the

charitable liability damages cap established by Massachusetts statute, Mass. Gen. Laws ch. 231,

§ 85K ("Section 85K") limit the damages available to Daley in this case? The Court turns to the

choice of law analysis that dictates the resolution of this issue.[5]

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Once a party "has properly supported its motion for summary judgment, the

burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his

pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v.

Dynamics Rsch. Corp., 63 F.3d 32, 37 (1st Cir. 1995). The Court is "obliged to [] view the

record in the light most favorable to the nonmoving party, and to draw all reasonable inferences

in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).

A court may enter summary judgment "against a party who fails to make a showing sufficient to

---

[5] There are several contested facts regarding liability, but they are not pertinent to the narrow
question presently before the Court.

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[6]

## III.   DISCUSSION

Under Massachusetts law, Section 85K limits charitable organizations' liability to $20,000 for general tort claims.[7] In contrast, New York abolished its charitable immunity doctrine in 1957, eliminating the protection against alternate damages that doctrine once provided to charitable entities and their employees.[8] See Bing v. Thunig, 143 N.E.2d 3, 8 (N.Y. 1957). On the undisputed facts presented here, Daley's damages against SERI will be subject to the $20,000 cap if Massachusetts law applies,[9] and they will be uncapped if New York law applies.

Massachusetts choice-of-laws rules govern here, and the Court must apply those rules because of the direct conflict between Massachusetts and New York law.[10]  The Massachusetts Supreme Judicial Court ("SJC") identifies sections 6 and 146 of the Restatement (Second) of

---

[6] SERI's motion and Daley's cross motion will be examined concurrently, as there is no dispute of any material fact connected to the choice-of-law analysis, nor is the Court called upon to draw any inferences in either party's favor.

[7] A higher cap applies to medical malpractice claims against nonprofits that provide health-care services, but SERI is not such an entity, so the alternate cap is not at issue here. See Mass. Gen. Laws Ann. ch. 231, § 85K (providing $100,000 limit for such claims); Doherty v. Hellman, 547 N.E.2d 931 (Mass. 1989) (requiring proof of a physician-patient relationship, among other things, as a component of a claim qualifying for the higher limit).

[8] New York never implemented a modified immunity doctrine such as a charitable liability cap.

[9] The undisputed facts place Daley's claims against SERI within the reach of the cap under Massachusetts law, if that law applies (i.e., her claims are torts, SERI is a charitable organization, and the underlying events arise from SERI's conduct in the course of pursuing its charitable purposes).  See Doc. No. 157 at 17 (agreeing cap would apply if Massachusetts law governed damages).

[10] When a federal court sits in diversity jurisdiction, as this Court does here, it is bound by the forum state's choice-of-law rules when determining the applicable substantive law. Cassirer v. Thyssen-Bornemisza Collection Found., 142 S. Ct. 1502, 1508 (2022); see also Burleigh v. Alfa Laval, Inc., 313 F. Supp. 3d 343, 351 (D. Mass. 2018). A choice-of-law analysis is necessary only when differing state rules lead to divergent results. See Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 668 (Mass. 1985). Here, SERI's exposure to liability is markedly different depending on which state's law is applied.

Conflict of Laws (1971) ("Restatement") as the principal criteria for a fair choice-of-law analysis in personal injury claims. See Cosme v. Whitin Mach. Works, Inc., 632 N.E.2d 832, 834 (Mass. 1994); see also Burleigh v. Alfa Laval, Inc., 313 F. Supp. 3d 343, 351-52 (D. Mass. 2018). The SJC borrows seven foundational elements from section 6 of the Restatement:

> (a) [T]he needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement § 6; accord id. § 145 cmt. b. The First Circuit refined the standard for tort and personal injury claims by centering its focus on Section 145(2) of the Restatement, which analyzes the relationship or the extent of the "contacts" each state has to the parties and tortious conduct, including:

> (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

Robidoux v. Muholland, 642 F.3d 20, 25-26 (1st Cir. 2011) (quoting Restatement § 145(2)). Together, sections 6, 145(2), and 146 of the Restatement create a comprehensive framework for determining which state has a more significant relationship to the tortious event. Robidoux, 642 F.3d at 26. Though these sections identify as many as eleven relevant factors, the four highlighted by the First Circuit are paramount to the analysis and are often determinative. Thus, the Court will examine those four factors first, then briefly address the other seven factors. See Burleigh, 313 F. Supp. 3d at 353.

A.          Restatement § 145(2)

The four elements listed in section 145(2) and emphasized by the First Circuit establish a general presumption that if the injured party lives in the state where her injury occurred, that state's law will govern the claim. See Burleigh, 313 F. Supp. 3d at 353-54; Restatement § 146 cmt. e. Here, three of the four "contacts" factors bear on the Court's analysis.[11] They follow the general presumption and favor applying New York law.

Generally speaking, the law of the state where the injury occurs "determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship." Restatement § 146 (emphasis added). In personal injury cases, the location of the injury is especially significant. See id. §§ 145(2), 145 cmt. e, 146. This is so because "persons who cause an injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury" unless the injury was due to a "fortuitous" circumstance, such as a car accident. Id. § 145 cmt. e. Here, Daley's diagnosis, surgery, and subsequent injury occurred entirely in New York.

Though SERI argues it had little reason to foresee an injury in New York, it developed MIRAgel for worldwide distribution and licensed it to Mira for such distribution. Thus, it reasonably should have expected that an injury could occur outside Massachusetts—in New York and elsewhere. This case simply does not present the sort of unusual and "fortuitous" circumstances that the Restatement provides might justify deviating from the location of the injury. See Restatement § 145 cmt. e (providing examples such as a car accident in one state

---

[11] The fourth factor—the locus of the relationship between the parties—is neutral here, as the parties lack a preexisting relationship. See Burleigh, 313 F. Supp. 3d at 355 (finding this factor often is not implicated in cases where a personal injury arises from a failure to warn or a defect in the design of a product).

involving residents of other states, an injury occurring in multiple states, or injuries caused by fraud or misrepresentation).  Therefore, this crucial factor—location of the injury—heavily favors applying New York tort law.[12]

At first glance, the next factor—the location where the conduct causing the injury was undertaken—appears to cut in the other direction. In a case such as this one, the conduct leading to the injury is the location of the injurious device's design, manufacturing, and shipping. Burleigh, 313 F. Supp. 3d at 353. Here, that location is Massachusetts, where SERI designed MIRAgel and Mira manufactured it. However, the Restatement specifies that if the tortious conduct and the injury occur in different states—as they did here—the relative weights of these factors require further examination. See Burleigh, 313 F. Supp. 3d at 353-54. Normally, if a personal-injury plaintiff resides in the place where she suffered the relevant injury, the location of injury is afforded greater weight in the analysis than the location of the tortious conduct. Restatement § 146 cmt. e. In addition, the Restatement explains that the location of the underlying conduct "is of less significance in situations where . . . a potential defendant might

---

[12] SERI attempts to soften the effect of this factor by saying it merits more weight when considering choice of substantive law than it does when considering choice of loss-allocation rules. Doc. No. 153 at 15. Though SERI's view that the location of injury can be overcome in some circumstances and need not always control choice-of-law for every aspect of a dispute, the facts presented here are materially different from those in the cases upon which SERI relies. See, e.g., Pevoski v. Pevoski, 358 N.E.2d 416 (Mass. 1976) (applying Massachusetts law to claims arising from a car accident and injuries occurring in New York but involving parties who each resided in Massachusetts, a Massachusetts-based insurer, and issues involving the interspousal relationship of a husband and wife from Massachusetts); Lu v. Otis Elevator Co., 933 N.E.2d 140 (Mass. App. Ct. 2010) (applying Massachusetts law on prejudgment interest in case arising from injuries suffered by Massachusetts residents in an elevator located in China, manufactured in China by a company based in Connecticut that does business in Massachusetts). In those cases, the choice-of-law analysis produced a result that deviated from the location of the injury primarily because the courts weighed heavily other grouped contacts, including the residence of the plaintiffs (none of whom lived in the place they were injured). Here, Daley resides where she was injured—a crucial distinction.

choose to conduct [its] activities in a state whose tort rules are favorable to [it]." Id. § 145

cmt. e.  Considering these principles, the Court finds that though this second factor favors

Massachusetts, it is not weighty enough in this case to overcome the strength of the first factor

on its own and shift the balance away from New York.

The scale only tips further in New York's direction when the parties' relationships to the

respective states are examined.  The Restatement explains that "the importance of these contacts

depends largely upon the extent to which they are grouped with other contacts," such as the

location of the injury or the location of the conduct causing the injury. Id. The "consistent and

enduring presence and connection" of the injured party to a particular location weigh heavily in

favor of applying that state's laws in the analysis." Burleigh, 313 F. Supp. 3d at 354. And, when

the injury and conduct causing the injury occurred in different states, the State with the greater

interest is the state with a direct connection to the injured party and the location of the injury. See

id. (noting "Massachusetts has an interest in holding GE accountable for its conduct," but finding

"the comparative weight" of that interest is secondary to "Maine's interest in providing

reasonable compensation" where "the injury took place in Maine and involved a Maine

resident").

Again, Daley is a "lifelong citizen and resident" of New York, whose injury occurred at a

New York hospital or elsewhere in New York. Doc. No. 157 at 1. As such, SERI's

Massachusetts contacts (i.e., its incorporation there and the creation of MIRAgel there) cannot

overcome the interests of New York.[13] The balance of the four factors the First Circuit identifies

---

[13] The location of injury would be secondary to the injured party's domicile and the location of
the tortious conduct if all parties were citizens of the same state. See Restatement § 145 cmt. e;
Cosme, 632 N.E.2d at 836. Here, the parties do not reside in the same state, and Daley's injury
occurred in her home state of New York.

as central to the choice-of-law analysis in a case such as this, then, strongly favor applying New York tort law.

    B.  Restatement § 6

The seven factors the SJC also applies from section 6 of the Restatement, five of which are implicated here, do not point to a different result.[14] The Court will briefly address these factors.

Two concern how to weigh the competing policies underlying the involved states' laws. See Restatement § 6(b), (c). Here, the only two states involved are Massachusetts and New York. Section 85K embodies a Massachusetts policy that "the funds of charitable institutions" should be "devoted to charitable purposes," so that charities are protected from "[being] impaired or wholly destroyed" by extensive liability claims. English v. New Eng. Med. Ctr., Inc., 541 N.E.2d 329, 333 (Mass. 1989). The interest Massachusetts has expressed in protecting its charitable institutions from insolvency is long standing.[15] Id. That the undisputed evidence establishes all of SERI's alleged liability creating activities both occurred in Massachusetts and were charitable rather than commercial in nature heightens the charitable interests advanced by the charitable cap.  Nonetheless, this Massachusetts interest in promoting research by charitable institutions runs directly into New York's substantial interest in holding SERI accountable for actions by

---

[14] Two elements are neutral. See Restatement § 6(a) (examining the commercial relationship between the involved states, which neither party argues would be impacted by this case); id. § 6(g) (examining the ease of determining the applicable standards, which is equally straightforward with respect to both involved states' law).

[15] It bears noting, however, that Massachusetts is an outlier in maintaining its charitable liability cap, and there is an effort underway in the Massachusetts legislature to abolish this statutory protection. See S.D. 1064, 193rd Gen. Ct. (Mass. 2023); H.D. 1524, 193rd Gen. Ct. (Mass. 2023); S.D. 1101, 192nd Gen. Ct. (Mass. 2021); S.D. 1599, 192nd Gen. Ct. (Mass. 2023).

SERI in Massachusetts causing injury within New York to a New York resident. Doc. No. 153 at 18. These differing loss-allocation rules reflect different substantive policy choices.

In this case, New York's interest outweighs Massachusetts interest for several reasons. First, applying New York law on this point does not defeat or preclude the Massachusetts loss-allocation policy of imposing a cap on damages for charitable institutions in tort cases at least as applied within the borders of Massachusetts or as to Massachusetts residents.  The Massachusetts interest in applying this policy to injuries suffered by New Yorkers in New York is diminished. Conversely, the New York interest in providing full compensation to its residents would be defeated, in this case, by applying the Massachusetts charitable cap.  Thus, this case is not analogous to Pevoski, where application of Massachusetts interspousal immunity laws to an action involving injuries that occurred in New York did "not in any serious way impair existing interests" of any party.  358 N.E.2d at 361 (quotation marks omitted).

Second, Section 6(e) of the restatement counsels examination of the punishment and deterrence of tortfeasors.  In a case involving injuries arising in New York and suffered by a New Yorker, applying New York loss-allocation law best advances the interests of punishing and deterring individuals or entities that cause such injuries.

Third, to apply the Massachusetts loss-allocation rule in the form of the charitable cap has the effect of permitting one state to shield from liability in-state tortious activity (or, here, alleged tortious activity) which causes injury in another state to a citizen of that other state in a foreseeable manner. In other words, the natural and inevitable consequence of SERI's activities resulted in the distribution of MIRAgel nationwide (including to surgeons who would use it in New York). In these circumstances, at least in the absence of other weightier considerations such

as a relationship between the parties, the law of the place of injury (New York) should govern to avoid de facto extraterritorial application of state law.

The remaining factors examine the parties' justified expectations, and whether the choice of law implicates considerations like certainty, predictability, and uniformity of result. Restatement § 6(d), (f). These factors generally favor New York law, as the simpler, more straightforward rule is to apply the law of the jurisdiction in which the injury occurred.[16] See Restatement § 146 cmt. c (describing the rule favoring application of the law of the place of injury as furthering the values listed in § 6(d) and (f) "since the state where the injury occurred will usually be readily ascertainable," which aids "in the determination and application" of the appropriate law); see also Burleigh, 313 F. Supp. 3d at 358 (citing § 146 cmt. c and noting application of the law of the place of injury often furthers values of certainty and predictability). But see Restatement § 145 cmt. b (noting these factors "are of lesser importance" in tort cases, especially those where the conduct, injury, and parties' domiciles are not consistent). Moreover, the Restatement instructs that in the case of negligent injuries, the injurious act usually occurs "without [the tortfeasor] giving thought to the law that may be applied to determine the legal consequences of this conduct," leaving the tortfeasor with "few, if any, justified expectations." Restatement § 145 cmt. b.  As the Court already has explained, SERI's choice to license MIRAgel for sale worldwide substantially undermines the reasonableness of any expectation that Massachusetts law would shield it from liability arising from any injuries suffered, regardless of location.

---

[16] In this case, as in many personal-injury cases, the place of injury is readily identifiable and not subject to reasonable dispute.

In sum, Daley was injured in the state where she has long resided. Having considered all relevant factors and principles articulated in the Restatement and incorporated into the Massachusetts choice-of-law analysis, the Court concludes that New York's contacts and interests are more significant than those of Massachusetts in the context of this case.

**IV.**   <u>**CONCLUSION**</u>

Accordingly, SERI's Motion for Partial Summary Judgment (Doc. No. 152) is DENIED, and Daley's Cross-Motion for Partial Summary Judgment (Doc. No. 156) is ALLOWED.

SO ORDERED.

 /s/ Leo T. Sorokin                       
United States District Judge

12